SARAH A. LATHAM

Appellant from Decree of Judge of Probate.

Androscoggin County.   Decided November 22, 1917.   This is an
appeal from a decree of the Judge of Probate approving and allowing
the last will and testament of Cain Latham.   In the Supreme Court
of Probate the jury found, upon the two issues of fact submitted to
them, first, that the testator was not of sound mind at the time he
executed the instrument which purports to be his last will and testa-

ment, and, second, that the testator was induced to make and execute said instrument by undue influence. The case comes before us on a motion to set aside the verdict.

The evidence as reported embraces four hundred and sixty pages. No exceptions are presented to any rulings of the presiding Justice as to the admission or exclusion of evidence, or to his instructions to the jury.

The testator at the time of his death, March 29, 1916, was between sixty-five and seventy years of age. He was born in England, and came to this country about 30 years before his death and settled in Lewiston, Maine. His wife and children came soon after. He worked in the cotton mills until about eight years before his death when he retired from that work and thereafter took orders for wall paper from samples.

The petition for the probate of the will in question recites that his estate does not exceed $5450, of which $5000 is real estate, and $450 personal estate. All his children, five in number, are living. The oldest, Mary (Ollerenshaw), forty-four years old at time of trial, was married at the age of nineteen, and has since lived in Lewiston. William, forty-one years old at time of trial, an operative in the cotton mills, is unmarried and has always lived at home with his parents. David, thirty-nine years old, was married at the age of twenty-three and moved to Lowell, Mass., where he now resides. Sarah, thirty-three years old, an operative in the cotton mills, is unmarried and has always lived at home. Ernest, twenty-nine years old, was unmarried at the time of his father's death. He is a painter and lived at home, until recently.

January 31, 1912, Cain Latham made a will, therein giving his wife the use and income of all his estate for the term of her life. Of the remainder of his estate, after his wife's death, he gave to his son David $100, to each of David's two children $100, to his daughter Mary and her only child $100 each, and all the rest of his estate he gave to William, Ernest, and Sarah, equally, saying in the will: "These three children are made the residuary legatees because they have especially aided me in accumulating my property."

The testator's wife died July 2, 1914. Soon after that, on the 21st of the same July, he sailed for England on a visit. He reached Lewiston on his return September 23, 1914. His three children, William, Ernest, and Sarah, went to Massachusetts to meet him on

the arrival of the steamer, but, owing to miscalculation as to the time, they did not meet him, and he arrived home in their absence. His visit was apparently disappointing, and he returned home tired, weak, sick, and dejected in spirit, at least.

It is conceded that before Mr. Latham took the trip to England he was of sound mind, possessing ample testamentary capacity. And we think the evidence justifies the conclusion that after his return home he appeared changed in both body and mind.

After he had been at home three or four weeks he began taking his meals with his daughter, Mary, his daughter Sarah then going to work in the mill, but he slept at his home, as did the three children, Ernest, William and Sarah. He continued to take his meals with Mary, paying her therefor, until a few days before his death.

On the 9th day of November, 1914, the testator executed the instrument in question. It is therein provided that the child of his daughter Mary should receive $200, that each of the two sons of David should receive $100, and that the rest of his estate should be equally divided among his five children, if all should be living at his death, otherwise among those that should then be living. This will he left with his daughter Mary, telling her not to inform the other children, about it. The three contesting children had no knowledge of it until after his death. And when the other will was read before the heirs, after his death, Mary, although present, said nothing about this second will. She says that her father told her to wait and hear the other will read.

In December, 1914, the testator signed a petition asking the Probate Court to appoint a guardian for him, alleging in the petition "that he is unfitted by reason of mental and physical disability to manage his affairs with prudence and understanding," and he petitioned that his son Ernest might be appointed such guardian, and he was so appointed, and so continued until the testator's death. The contestants testified that Mr. Latham after his return from England, failed wholly to attend to his business affairs in connection with his property, and that the guardianship was a necessity, and being proposed to him he not only assented to it but seemed pleased with the idea. The case is almost barren of any business matters that the testator transacted after his return.

The foregoing unquestioned facts and circumstances reveal something of the testator's life before his wife's death, of his family and their relation to him, of the testamentary disposition of his property

as contained in the will of 1912, and of his condition of body and mind after he returned from England on September 23, 1914. The contestants claimed that he was then broken down mentally to such an extent that he no longer possessed testamentary capacity. On the other hand, the proponents of the will contended that, although he was then weakened in body, he was still mentally capable of disposing of his property by will. That was the first issue submitted to the jury.

The evidence bearing on that issue is too voluminous to be analyzed within reasonable limits. On the side of the contestants it includes the testimony of very many witnesses, of many years close personal acquaintance and association with Mr. Latham, who relate that he quite invariably failed to recognize them when they spoke with him after his return, and could not seem to realize who they were after being told, and that he did not appear to possess ability to converse with them when they tried to talk with him. They also relate many instances of strange acts on his part, including quite frequent crying and sobbing, when spoken to by his friends, and statements by him that his wife was with him, or coming soon to see him, and that he himself was dead.

On the other hand, the proponents of the will introduced the testimony of the experienced attorney who drafted the will, that Mr. Latham came to his office alone on Saturday, November 7th, 1914, and gave him the data for drafting the will, and came again on Monday alone when it was read to him, and he expressed his approval of it and signed it. And in the opinion of the attorney the testator was of sound and disposing mind. The proponents also called several witnesses who testified that they saw and talked with Mr. Latham after his return, and that they saw nothing unusual about him mentally.

But the jury saw all the witnesses and heard them testify, and they had a better opportunity to determine the weight of the testimony than this court has with only their printed words to study. The case is not a strong one in support of the contention of the contestants.

But after a careful examination of all the evidence presented, as to the testamentary capacity of Mr. Latham at the time the will in question was executed by him, we are not persuaded that the finding of the jury in favor of the contestants is so clearly erroneous that it should not be permitted to stand. ·

We feel, however, that there is much less competent evidence to support the finding of the jury in answer to the second question, that the testator was induced by undue influence to make and execute the will. But, even if the finding of the jury in answer to the second question is against the weight of the evidence, and we incline to the opinion that it is, nevertheless, the motion for a new trial must be overruled, because the jury found, and were justified in finding, that the testator was not of sound and disposing mind when the instrument was executed. *Carvill* v. *Carvill*, 73 Maine, 136, 138.

It is to be noted that after the verdict the Supreme Court of Probate made and entered its decree, wherein it sustained the appeal, reversed the decree of the Judge of Probate, disallowed and rejected the instrument in question as the last will and testament of Cain Latham, and remanded the cause to the Probate Court for further proceedings. That decree appears to be in force, its validity not having been questioned by exceptions or otherwise. The practice in such case should be, we think, for the party filing the motion for a new trial, to move the court not to enter any final decree pending the motion for a new trial on the issues presented to the jury, and, should a decree be made notwithstanding that motion, then to take and prosecute exceptions to the making of such decree under the circumstances.

In the case at bar, however, the motion for a new trial being overruled, no confusion will arise because of the fact that the decree was entered and stands unchallenged. Motion overruled. *J. G. Chabot, and Newell & Woodside,* for proponents. *McGillicuddy & Morey, and L. J. Brann,* for appellant.